NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Sonny JACKSON,

Plaintiff,

v.

HAMILTON TOWNSHIP, et al.,

Defendants.

Civ. No. 10-3989

**OPINION**

THOMPSON, U.S.D.J.

The present matter comes before the Court on the motion of Defendant Hamilton Township and others (hereinafter, "Defendants") for summary judgment, (Doc. No. 63). The Court has issued the Opinion below based upon the written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendants' motion is denied in part and granted in part.

BACKGROUND

The present factual scenario stems from the police chase and subsequent arrest of Plaintiff Sonny Jackson (hereinafter, "Plaintiff"). While investigating a string of thefts, Defendant Michael Everett of the Hamilton Township Police Department noticed Plaintiff, a suspect in the thefts, driving a car. (Doc. No. 70 at 2). Defendant Everett pulled Plaintiff over. (*Id.*). After stopping temporarily, Plaintiff drove away. (*Id.*). Defendant Everett began to chase Plaintiff. (*Id.*).

Once the chase began, Defendant Officer Thomas Clugsten, Defendant Officer Joseph Wilk, and Defendant Officer Mark Horan joined in the pursuit. (Doc. No. 70 at 3). Eventually, Plaintiff stopped his car and exited. (*Id.*). Testimony differs as to

1

whether Plaintiff then began to kneel or began to flee.  (*See* Doc. No. 70 at 3; Doc. No. 63 at 1).  Additionally, testimony differs as to whether Plaintiff resisted or complied with police attempts to handcuff and subdue him.  (Doc. No. 70 at 3).  Plaintiff contends that, though he was kneeling down, the officers hit him with a car and then proceeded to kick and beat him.  (*Id*. at 14).  Plaintiff sustained various injuries during the event.  In response to the above incident, Plaintiff brought the present suit, claiming violations of his constitutional rights and a conspiracy to violate his constitutional rights.

DISCUSSION

The Court will first note the applicable legal standard before examining each issue raised by the summary judgment motion.

1. *Legal Standard*

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law [. . .]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.*  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250 (quoting Fed.R.Civ.P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatte v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg,* 594 F.3d 210, 227 (3d Cir. 2010) (citations omitted) ("[S]peculation and conjecture may not defeat summary judgment.").

2. *Analysis*

Defendants' motion brings up five issues: (1) township liability under *Monell*; (2) Plaintiff's §1983 claims (during the pursuit and during apprehension); (3) the New Jersey Civil Rights Act; (4) qualified immunity of Defendants; and (5) Plaintiff's §1985 claims.

    a.  **Township Liability**

A municipality "can be found liable under §1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *Monell v. Dept. of Soc. Servs., New York City,* 436 U.S. 658, 694–95 (1978). District Courts must review claims of municipal liability "independently of the §1983 claims against the individual police officers." *Kneipp v. Tedder,* 95 F.3d 1199, 1213 (3d Cir. 1996); *Fagan v. City of Vineland,* 22 F.3d 1283, 1294 (3d Cir. 1994).

A municipality may be held liable where its policies or customs are "the moving force [behind] the constitutional violation." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981). Therefore, a plaintiff must identify a municipal policy or custom that amounts to

"deliberate indifference" to the rights of people with whom the police come into contact. *City of Canton,* 489 U.S. at 388. In order to show deliberate indifference in a "failure to train, discipline or control" claim, a plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone,* 159 F.3d 120, 127 (3d Cir. 1998) (citations omitted)

After proving deliberate indifference, a plaintiff must then demonstrate that the inadequate training caused the constitutional violation. *See Grazier v. City of Philadelphia,* 328 F.3d 120, 124–25 (3d Cir. 2003). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Brown v. Muhlenberg Township,* 269 F.3d 205, 214 (3d Cir. 2001) (citations omitted). However, "[a]s long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).

Plaintiff's claims can be broken into two categories: failure to train police officers on use of force and failure to adequately investigate Internal Affairs claims. The Court will deal with each in turn.

*i. Failure to Train Police Officers*

Plaintiff alleges that the municipality and Chief Collins are directly responsible for his injuries on the grounds that each failed to train and supervise police officers on the use of force. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of

4

an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350 (2011). However, a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell.*"). Therefore, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360; *see also Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997) (policymaker's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action— the 'deliberate indifference'—necessary to trigger municipal liability").

Here, Plaintiff fails show deliberate indifference with respect to the harm alleged. Plaintiff alleges that the mandatory semi-annual training in Use of Force and Pursuit was "wholly deficient." (Doc. No. 71 at 30). The training consisted of "brief" presentations on the policies on excessive force that lasted roughly five minutes. (*Id*. at 31). While each officer read the policies and attested that he read and understood the policies, (*id*. at 30), Plaintiff argues that simply reading the policies is insufficient and that several officers did not understand the policies on force, (Doc. No. 70 at 33). Despite these allegations, Plaintiff fails to provide proof of a pattern of excessive force or even proof that Defendants knew the training was inadequate.[1] *See Connick*, 131 S. Ct. at 1360

---

[1] Plaintiff submits a Public Safety Report that criticizes the leadership and supervisory capabilities of certain Chief Collins and other officers; however, Plaintiff has failed to show that this Report or a report of this kind is sufficiently probative to the issue of

5

("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Taking the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has not shown the existence of a genuine issue of material fact as to whether Defendant Collins or the municipality acted with deliberate indifference.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001) ("a successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff before the plaintiff's injury occurred").  Accordingly, summary judgment is granted in Defendants' favor.

> ii.  *Failure to Take and Investigate Civilian Complaints and Complaints Regarding Use of Force*

Similarly, a custom of failing to investigate citizen complaints may provide a basis for municipal liability if "a policy-maker (1) had notice that a constitutional violation was likely to occur, and (2) acted with deliberate indifference to the risk." *Hernandez v. Borough of Palisades Park Police Dep't,* 58 Fed. Appx. 909, 912 (3d Cir. 2003).

Here, Plaintiff alleges that the municipality failed to investigate civilian complaints and use of force claims.  (Doc. No. 71 at 21) ("citizen complaints of force were not investigated or adequately considered").  Plaintiff claims that on a few occasions officers failed to write "use of force complaints" and Internal Affairs complaints were not completely investigated.  (Doc. No. 71 at 24).  Specifically, Plaintiff

---

whether Defendants had notice that any deficiency in training presented a sufficient risk of constitutional violations of the kind alleged here.  *See* FRE 401; FRE 403.

alleges that Defendant Officer Wilk was accused of excessive force on one occasion, but his Internal Affairs file was misplaced and there is no proof that he gave an interview. (Doc. No. 70 at 28).[2]

However, Plaintiff fails to allege sufficient facts upon which a jury could find deliberate indifference. Since Plaintiff is not alleging an affirmative policy or custom that prevented adequate investigation, Plaintiff must show that "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 584 (3d Cir. 2003) (internal citations omitted). The "need to take some action to control the agents" in this case differs considerably from the "seminal" failure to investigate citizen complaints case, *Beck v. City of Pittsburgh*, 89 F. 3d 966 (3d Cir. 1996). In *Beck*, the Internal Affairs office did not pursue any complaints against an officer even though the officer received four excessive force complaints and a total of six citizen complaints in a three-year period. *Beck*, 89 F. 3d 966 at 969-70. In contrast, to the "cursory investigation of citizen complaints" in *Beck*, the Internal Affairs agents in this case attempted to follow up on complaints and had procedures in place that were generally followed. *See also Brice v. City of York*, 528 F. Supp. 2d 504, 520 (M.D. Pa. 2007). Though, Plaintiff alleges that a small number of complaints were not handled

---

[2] Expert testimony also argues that failure to properly take and investigate civilian complaints led to a tacit approval of the use of excessive force, which ultimately caused the excessive force used against Plaintiff. (Doc. No. 71 at 24). However, the Court does not reach the causation question.

correctly, the allegations here "do[] not depict a 'sterile and shallow . . . investigation' procedure." *Id*.

Since no reasonable jury could find deliberate indifference, summary judgment is granted in Defendants' favor. *Anderson,* 477 U.S. at 250 ("the adverse party 'must set forth specific facts showing that there is a genuine issue for trial'").

b. **Plaintiff's § 1983 Claims**

For the purposes of this motion, Plaintiff's claims for damages can be divided into two segments: (1) damages suffered when "eluding" officers; and (2) damages suffered during and after apprehension.

i. Damages While Eluding Officers

Plaintiff alleges that several officers violated Plaintiff's rights under the Fourth and Fourteenth Amendments when they pursued him and he was injured as a result of the pursuit. Defendants claim that Plaintiff cannot bring these claims because the pursuit does not constitute a search or seizure in violation of the Fourth Amendment and the actions that occurred during the pursuit do not rise to the level of a substantive due process violation under the Fourteenth Amendment. The Court agrees with Defendants.

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith v. Marasco,* 318 F.3d 497, 515 (2003). It is well established that a police pursuit is not a "seizure" within the meaning of the Fourth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Since no seizure occurred until Plaintiff was actually stopped by the police, Plaintiff cannot recover damages under a Fourth Amendment claim for injuries during the pursuit.

To prevail under the Fourteenth Amendment claim, Plaintiff must show a substantive due process violation. To show such a violation, Plaintiff must prove that the governmental conduct was so arbitrary, brutal or offensive that it "shocks the conscience." *County of Sacramento*, 523 U.S. at 845-847. "[H]igh speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." *Id.* at 854.

Here, Plaintiff has alleged that the pursuit was unlawful; however, Plaintiff has not shown that the actions that occurred *during* the initial chase and *before* actual contact rise to the level of a substantive due process violation. The Court grants the motion for summary judgment to the extent that it precludes recovery for injuries that occurred during the car chase.[3]

ii. Injuries During Apprehension

Plaintiff's claims for damages during his apprehension stem from alleged Fourth and Fourteenth Amendment violations. The Court will first examine the standards for both violations in the contexts of an actual seizure.

Determining whether the force used to effect a seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citations omitted). The right to make an arrest carries with it the right to use some degree of physical coercion. *See Terry v. Ohio,* 392 U.S. 1, 22–27 (1968). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or

---

[3] Moreover, Plaintiff appears to now concede that the pursuit did not rise to the level of a substantive due process violation. (*See* Doc. No. 70 at 19-20).

mechanical application,[] its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see Garner,* 471 U.S. at 8–9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

In order to find a substantive due process violation under the 14th Amendment, a plaintiff must prove that the officer's conduct was "arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citations omitted). "What is shocking to the conscience inevitably depends to a degree on whose conscience is being tested; so, to put it mildly, the standard has some give in it." *Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011); *see also Lewis,* 523 U.S. at 847 (noting that the measure of what "shocks the conscience" is not precise); *Kaucher v. County of Bucks,* 455 F.3d 418, 426 (3d Cir. 2006) (noting that "[t]he question of whether a given action shocks the conscience has an elusive quality to it")(internal quotation marks and citation omitted).

"[C]onduct intended to injure" is the "most likely to rise to the conscience-shocking level." *Lewis,* 523 U.S. at 849 (citations omitted). "Conscience-shocking behavior may also arise in the form of injuries produced by deliberate indifference, although, where the conduct was not intentional, it is a 'closer call.'" *Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011) (citations omitted)*.*

Here, there are genuine issues of material fact as to the amount of force necessary to subdue Plaintiff, the amount of force used on Plaintiff, and the reason force was used

10

on Plaintiff. Therefore, summary judgment with respect to this claim is inappropriate. *See e.g., Abraham,* 183 F.3d at 290 ("reasonableness under the Fourth Amendment should frequently remain a question for the jury").

### c. New Jersey Civil Rights Act

Plaintiff alleges that the conduct of Defendants violated the New Jersey Civil Rights Act, ("NJCRA"). N.J.S.A. 10:6-1. "NJCRA was intended to serve as an analog to [§ 1983]; it was intended to 'incorporate and integrate seamlessly' with existing civil rights jurisprudence." *Slinger v. New Jersey*, 2008 WL 4126181 (D.N.J. Sept. 4, 2008) *rev'd in part,* 366 F. App'x 357 (3d Cir. 2010). Accordingly, all claims under NJCRA are treated the same as the comparable § 1983 claims. Therefore, Plaintiff's NJCRA claims for damages that occurred prior to seizure fail to the same extent that Plaintiff's claims for damages that occurred prior to seizure under § 1983. *See Baklayan v. Ortiz*, 2012 WL 1150842 (D.N.J. Apr. 5, 2012).

### d. **Qualified Immunity**

Qualified immunity is intended to shield government officials performing discretionary functions, including police officers, "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. *See Beers–Capitol v. Whetzel,* 256 F.3d 120, 142 n. 15 (3d Cir. 2001).

A ruling on qualified immunity must be undertaken using a two-step inquiry. *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). First, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's

conduct violated a constitutional right. *See id.* at 201. "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy,* 274 F.3d 133, 136 (3d Cir. 2002).

If, however, "a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Saucier,* 533 U.S. at 201. "The relevant dispositive inquiry" in making this determination is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004)

Here, the accounts of both Parties differ materially. Taking the facts in the light most favorable to Plaintiff, it is clear that a reasonable officer would know that the kicking and beating of the kind alleged here was unlawful. *See Anderson v. Creighton*, 483 U.S. 635 (1987); *Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005). Since issues of material fact remain, summary judgment is denied.

e. **§1985**

42 U.S.C. § 1985 provides a cause of action for individuals deprived of their federal rights by conspiracies. *Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3d Cir. 1980). The elements of a § 1985(3) claim are the following: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber*

*v. City of Paterson,* 440 F.3d 131, 134 (3d Cir. 2006) (internal quotations and citations omitted).

Here, Plaintiff's arguments for conspiracy under §1985 fail.  Plaintiff claims that Defendants were acting under color of state law and subjected him to excessive force.  However, Plaintiff fails to show an agreement made for the purpose of depriving Plaintiff's rights.

Plaintiff also fails to show that an agreement was entered for the purposes of violating Plaintiff's federal rights.  Plaintiff alleges that the Mobile Video Recorder on a police car was intentionally disabled or tampered.  (Doc. No. 70 at 15-17).  Plaintiff also alleges that an Officer named Frank Burger was involved in the chase but did not fill out a Pursuit Form in connection with this event.  (Doc. No. 70 at 11).  However, Plaintiff must show that the Officers reached an agreement *before* the violation, the excessive force, occurred.  *See Mazloum v. D.C.*, 442 F. Supp. 2d 1, 10-11 (D.D.C. 2006) (plaintiff must prove "facts which would indicate that either of the officers had *previously* devised a plan").  Plaintiff also alleges that the officers communicated and coordinated with each other during the chase.  Plaintiff does not show that this coordination constituted an agreement, much less an agreement to violate Plaintiff's rights.

Also, with respect to Defendants' purpose, Plaintiff argues that the entire incident "smacks" of racial animus.  Plaintiff shows that Plaintiff is African American and the officers are Caucasian.  However, Plaintiff provides insufficient information to support a reasonable inference that Plaintiff was injured *because* he was black.  *See Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 188 (2d Cir. 1978)( mere fact that plaintiff is black

and defendants are white is insufficient to support a finding of racial animus). Accordingly, this claim fails.

## CONCLUSION

For the reasons stated above, Defendants' motion is granted in part and denied in part.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.